Aaron Morrison is my name, and I'm joined at council table by Lisa Lopez, who was one of the trial counsel, and we, along with Eric Renshaw, represent Sharon Rosebear. We raised three issues in our brief, but I would like to direct my comments towards the sentencing issue, and I think, I actually don't disagree with the fact that the district court applied Norquay. Norquay is the controlling law in our district, and as the court knows, when someone is convicted in federal court of a state court crime, the Major Crimes Act and this court's direction in Norquay requires the district court, during sentencing, to determine what the minimum and maximum sentence the person could receive under state law is. And when Norquay was decided in 1990, the Minnesota sentencing guidelines were at that time mandatory, as they are today, but there was a big difference. In 1990, when someone was sentenced in Minnesota state court for a crime, the statute created a minimum and maximum penalty, but the sentencing guidelines also recommended a maximum penalty. Essentially, the presumptive sentence became the maximum sentence that the person could receive. In 1990, though, which, of course, predates Apprendi and Blakely, at that time, the sentencing judge in district court, while it was supposed to give great deference to the presumptive sentence, the mandatory maximum, essentially, that the person could receive, the court could, on their own, find aggravating factors and sentence beyond that presumptive sentence. Then Apprendi comes and Blakely comes and the Minnesota Supreme Court looks at these and says, okay, the Minnesota sentencing guidelines are now mandatory unless the... But Booker wiped out that, the underpinning of where that argument goes. I disagree with you, Judge, and the reason why I disagree with you is I think it did wipe that out for the majority of sentencing states, but Minnesota's sentencing regime along with the four other states in the union create, and this Minnesota Supreme Court has directed sentencing, that sentencing in Minnesota under the guidelines is mandatory, and the only way you get above the Minnesota guide... And, Booker, so the Federal, in 1990, the Federal guidelines were mandatory. Minnesota guidelines were mandatory. Now the Federal guidelines are advisory and you say, oh, well, but you still have to, you're still, you're still controlled by the mandatory state guidelines. I think that's contrary to a fair understanding of what Booker did to Federal sentencing. And we don't even, this is what, first impression here or basically everywhere? Basically everywhere. Yeah, so I just, and of course we lived, at least I lived through the Apprendi-Blakely and then Booker revolution. I did too, if you can believe it, Judge. Yeah, well, no, I mean, Booker was revolutionary. Nobody thought that's where things were going. And I don't disagree with you, Judge, but here's the point is, is that Congress did not go back and change the Federal sentencing guidelines to make them compliant with Apprendi issues. But Minnesota did. Minnesota did. The U.S. Supreme Court did. I understand that. But what I'm saying is, is Congress could still pass a mandatory sentencing guideline regime, just as the Minnesota sentencing guideline regime is mandatory, so long as it also complies with Apprendi. And that's what now, in Minnesota, for someone to be  I just don't think, that's not my understanding of today's environment. In Minnesota. I mean, your notion of what Apprendi requires Federal, that requires Federal courts to kneel and pay homage to the mandatory aspect of Minnesota sentencing. No, I'm saying that the Major Crimes Act and this Court's decision in Norquay requires that we pay homage in this case. What in the text of the Major Crimes Act? That a defendant should be sentenced in accordance with the state laws. So it's not a situation where, and that's what Norquay says, too. Norquay says when someone is charged with a State court crime in Federal court, the Federal court must follow the elements that are laid out in State court case law and sentence in accordance with State court case law. I agree with the Norquay holding that that doesn't mean that we absolutely import into the Federal system the State court sentencing regime. But this Court made it clear in Norquay that the Court must incorporate in the sentencing portions of the State court case law and State court statutes that dictate or determine the minimum or maximum sentence. And in Minnesota, after Shattuck, Shattuck directed Minnesota courts that the presumptive sentence is the maximum sentence a person can receive outside of compliance with Apprendi and an increase in the mandatory minimum. That's not dissimilar to an 851 enhancement or an ACCA enhancement increasing a sentence above the mandatory or the maximums in Federal court. So when someone like Ms. Rosebear is tried in Federal court for a State court crime, and convicted, the Court must determine what was the sentence that the State court could have sentenced Ms. Rosebear to. In this case, there's no disagreement. The district court and the government agrees in State court she could have only been sentenced to a probationary sentence because that's what the Minnesota sentencing laws dictate and control and require. The presumptive sentence creates that maximum sentence. And to simply say we're going to only account for the maximum outlined in the statute is to disregard the plain text of the Major Crimes Act when it says in accordance with the State sentencing laws. You have to look at the totality of it. And because of the mandatory requirements of the Minnesota sentencing guidelines, creating a presumptive sentence without the State proving aggravated sentencing enhancements beyond a reasonable doubt, that's the maximum that is created by the Minnesota sentencing guidelines, the Minnesota sentencing case law. That's consistent with the Major Crimes Act statutory language. And you know, this is a point to that, is that following this Court's decision in Norquay, Congress did go back and address some of these sentencing issues. Congress could have gone back and said the sentence that the person faces is whatever is detailed by the statute as the minimum and maximum sentence. They did not. They continued to say that in accordance with the State sentencing laws and then anything that falls outside of or is more than what the Federal sentencing, that should be disregarded. And we're not asking the Court to go outside. We're asking the Court simply to follow the plain language of the statute, follow the direction in Norquay and harmonize that with the requirements of Apprendi and Blakely and look and see that in Minnesota, Ms. Rosebear could have only received in this case a probationary sentence. That becomes by Minnesota State case law and Minnesota State law the maximum sentence. That's what this Court, that's what the District Court was required to find. That was the analysis they were required to do. The closest we get to this is the Peebles case that the government cites, which is an unpublished Fourth Circuit case. And the reason why the Peebles case is the closest case is that the 28J case that the government added yesterday out of Texas, that has to do with the supervision above and beyond. Again, I think the Federal statute is clear that that's supervision. That's not imprisonment. Kennedy. How does the text of the two statutes differ? Cohn. So going back Kennedy. Simulated crimes and major crimes. Cohn. The Simulated Crimes Act says that the sentence of imposition must be like the sentence the person would receive in State court. Most of the courts that have reviewed this out of the Tenth Circuit and the Ninth Circuit have said essentially, we interpret this as to be the same. The sentence that's received in Federal court must be similar, must be like the sentence, in accordance with the sentence. And I don't think that there's a big distinction between those two. I would like to reserve the rest of my time for rebuttal unless there's a specific question that I need to answer right this moment. Ms. Is it Craker or Crocker? It's Crocker, Your Honor. May it please the Court, my name is Rachel Crocker, Assistant United States Attorney, appearing on behalf of the government. I was also trial counsel in this matter. Sharon Rosebear asked this Court to abandon the Federal sentencing principles set forth in 3551 and 3553 in favor of the wholesale adoption of the Minnesota State Sentencing Scheme in major crimes cases where State statutes are assimilated and no analogous Federal guidelines exist. This approach defies the intent of the Sentencing Act and the precedent of Norquay and Booker and would eliminate the discretion of Federal judges to sentence pursuant to Federal statutes. As the Court pointed out, this approach also would signify a change of course for this District and many others across the country that have consistently held that in these types of cases, both major crimes and assimilated crimes, that the parameters for sentencing for Federal judges are the minimum and maximum set forth by the State statutes. The circuits that have consistently held this include this circuit, the Eighth, the Third, the Fifth, the Ninth, the Tenth, and the Eleventh. The Fourth District is an entire with Peebles, but it's the government's position that Peebles was incorrectly decided. I'd like to point the Court to Martinez, which is a 2021 case involving a burglary crime. This is a major crimes case. In that particular case, the Court was determining whether or not a conditional discharge that was part of the State statutory scheme was appropriate to incorporate as part of the sentence for the offender. The offender argued that because that was available in the State sentencing scheme, that they should be sentenced accordingly. But Martinez rejected that reasoning and indicated clearly what has been held so long before, and that is that Federal sentencing courts are not bound by State sentencing schemes. And they expressly rejected that in the context of a suspended sentence in Martinez, which is very similar to what we're dealing with here in Rosebear, a presumptive suspended sentence. In order to accept the defendant's position that the maximum sentence would be the presumptive sentence under the Minnesota State guidelines, the Court has to adopt the entire sentencing guidelines scheme. And I think I heard my colleague say that he agrees that Federal courts are not required to adopt entire sentencing schemes. But here, the only way that Sharon Rosebear's sentence, the maximum that she could receive in State court, is 18 months, is if you follow that State sentencing scheme. Because within the Minnesota State sentencing guidelines and the parameters for prosecution of crimes in Minnesota, there is an avenue to seek an aggravated sentence. And I would submit to the Court that Sharon Rosebear would absolutely be an individual who would see a notice of aggravated sentence that would be pursued by the prosecutors in this particular case, if it were tried in State court. So Sharon Rosebear could have been sentenced in State court to more than a State sentence. She could have been sentenced in an upward dispositional departure to a prison sentence. But we're not in State court. We're in Federal court. And so the Federal rules apply. As I understand the argument by the defendant, it is that because of the mandatory nature of the Minnesota sentencing guidelines, that there would be a separate sentencing scheme in Indian country cases arising out of the State of Minnesota, as opposed to every other Indian country case that arises out of any of the other States in this circuit. And that would be that if you prosecute an Indian country case and you want to get above whatever the presumptive range is, you're going to have to treat this the same way we treat, you know, kidnapping resulting in death or death penalty cases. You'll have to prove, you'll have to plead aggravated circumstances. You'll have to present that proof. And there's no way to avoid any of that. So it becomes that the Minnesota State law will apply on sentencing to cases arising under the Assimilative Crimes Act or the Major Crimes Act in Minnesota. But everybody else is going to be consistently sentenced under State law, under Federal law. That's correct, Your Honor. And I can sense by, you know, by your tone and your concern that that would be an extreme problem that would result in a lack of uniformity in sentencing, which certainly defies the intent of the Sentencing Act. That specific issue actually was addressed in Booker at the time that Booker was determining what to do with the Sentencing Act, whether to sever a portion of it, whether to start over. In Booker, the Court specifically addressed the issue of the, what was the government's argument, that in certain cases perhaps we'd apply a mandatory guidelines scheme and in certain cases the guidelines would be advisory. And the Court in Booker said, we believe, and this is a quote, we believe that Congress would not have such a system given the administrative complexities, end quote. And that's also reiterated in the 28J case. I recognize that procedurally there is some dissimilarity there. But the Flores case specifically cites the concern about the creation of two classes of Federal prisoners, those sentenced under the Federal guidelines and those sentenced under State procedures. This does not serve the purposes of 3551 or 3553 and it stands at odds with the directive from Congress to apply these statutes and the discretion of Federal judges to make their determinations about what an appropriate sentence would be in each individual case. Am I right in my understanding that if you had one of these cases arising in Minnesota and the defense position prevailed, that if a defendant wished to plead guilty to a crime in a sentencing context, you'd still need to call a sentencing jury in and hold a sentencing jury trial to prove up an aggravated circumstance if they declined to answer that question? That's correct, Your Honor. And Your Honor points out the fact that the sentencing procedures of Minnesota are complicated. Adopting the entire sentencing scheme would require district judges to become experts in the area of Minnesota case law. And if that precedent were to expand, then in other cases in the district as well. Though the appellant or the defendant indicates that it would only require just a limited inquiry into what a presumptive case or presumptive sentence would be in state court, the factors that go into determining what a presumptive sentence is in state court are actually quite complicated. And one primary concern is that they are based on the calculation of a criminal history score on a state sentencing scheme, not a Federal sentencing scheme. So for Ms. Rosebearer, it's an easy question. She has a criminal history score of zero in state court or a criminal history score of zero in Federal court. But there are people who could come before the court who may have a state criminal history score of five, but it would be much less in Federal court. There are different considerations in state court about what counts towards that criminal history score. There are disputes about how Minnesota criminal history should be decided for out-of-state convictions. A Minnesota defendant could have a conviction for a crime called battery, which maybe the state would argue is a felony and should be worth one point. But if you looked at that out-of-state conviction, battery may be the equivalent of a misdemeanor, which would not result in the same treatment. So then who decides the disputes about criminal history? Do we have to train our pretrial services on Minnesota state sentencing schemes? What about counsel? What about judges? We have disputes already under Federal law. Why would it be any different or more complicated under defense regime? Under Federal law, Your Honor, we are working with one set of calculations of criminal history and one set of rules and guidelines. We have fights over points all the time. And what crimes get how many and why? That's true, Your Honor. But here we would have separate guidelines for how those disagreements should be resolved. And we'd be relying on a sentencing scheme and a completely separate evaluation that is not based or rooted in the statutes. I think you're assuming that accepting this argument on the max minimum would require incorporating the entire state regime, which other Federal court circuits have rejected. I'm not sure that's true. We do have some abilities to be more careful. I'm not sure this argument equals, accepting this argument equals your office has to buy the whole state regime in every MCA prosecution. And Your Honor, I respectfully disagree. I think the way that the Minnesota sentencing guidelines are set up and the mandatory nature and how they calculate what a judge is at liberty to do, it actually would require, if that was set as the maximum, you'd have individualized maximum for each defendant who would appear before the court. And there would not be discretion for district judges. We have that all the time, too, in multiple defendant cases. If you look at the multiple level analysis that you need to do to get to a presumptive sentence under Minnesota law, could we do that applying Federal law? Or do we have to go back and take all the laws found in the Minnesota sentencing guidelines to get to that presumptive sentence? I think your question is, Your Honor, whether the, if I'm understanding it correctly, whether you... Well, let me make it more plain. I'm having a hard time figuring out how you don't import the entire Minnesota sentencing regime into this system if the defendant prevails. Because I don't know how you can calculate the presumptive sentence without going through the steps a Minnesota district court judge would have to do, applying the factors that the Minnesota district court judge would have to do. And in some cases, and I speak from, it's been a long time since I've worked with the Minnesota guidelines because I've been a Federal judge since, you know, 2003. But I can tell you when I did that work, it was difficult, complex, and for people who didn't work in it, it was weird, right? It seemed strange. And it's only gotten stranger post-apprendee, post-booker, right? I mean, I'm just saying, I don't know how you can do this if you don't take it all. Because I don't know how you can get to the number without taking it all. I agree, Your Honor. And to use your term of weird, the grid is, it is weird and it is hard to get used to unless you have some experience and have practiced for a while. You move up that guidelines grid based on the accumulation of points. And that point system is based on the state system. Sharon Rosebear, her presumptive sentence was not a presumptive stayed 18-month probationary sentence because her conduct was any less egregious than an individual who had five criminal history points. She simply didn't have as many criminal history points as an offender who may have conducted, who may have committed the same conduct. In this case, Your Honors, I do think it's worth noting the quote from Chief Judge Schiltz at sentencing in this case. He did consider whether it would be appropriate to sentence Ms. Rosebear to probation. And he rejected the idea that he was bound by the state sentencing scheme. He also rejected the idea that probation would be appropriate based on the very egregious circumstances in this case that ultimately resulted in the death of a seven-year-old girl. He said, anyone who so neglects a child that she helps to cause the child's death has committed a terrible crime. But even within this category of terrible crimes, Rosebear's conduct stands out. He also indicated that he considered sentencing her to a longer sentence, but that he evaluated the 3553A factors and he also considered her age and medical needs. And because of that, he imposed the sentence of 15 months. The government's request is that this court maintain the precedent that has been set forth and followed in this district and so many others and is in the plain language of the statute. And that is that for the purposes of major crimes sentencing and assimilative crimes sentencing, the maximum sentence is the statutory minimum and maximum allowed by state. And that the sentencing courts are not required to adopt state sentencing schemes. We'd ask that you affirm the judgment of the district court. Thank you. Judge Erickson, I respectfully disagree with you about your characterization of the Minnesota sentencing guidelines. In getting to Ms. Rosebear or any individual defendant's presumptive sentence in Minnesota, there are only really two things that are decided. You look at the statute of conviction. The statute of conviction is ranked by the sentencing guidelines. That puts you on one axis of the grid. And then you determine the person's criminal history. And as Judge Loken pointed out, our federal district court judges determine criminal histories all the time. And yes, there is a difference in how Minnesota determines criminal history than federal court does. But again, I have greater faith in our federal district court judges. They have to deal with state law on a variety of issues in civil cases and administrative contexts. This isn't creating or importing the entire Minnesota sentencing program into federal court. It's simply following the requirements of the Major Crimes Act directive of sentence in accordance with state laws and this Court's directive in Norquay to determine the minimum sentence and the maximum sentence. And that is not an onerous task, but it's also just what the law actually requires. Again, Congress could have said it differently in, but they chose not to. They chose to, again, continue to incorporate all of state law's sentencing. And I want to get back to the Peebles case, which is an unpublished case. And so, of course, it wouldn't necessarily represent a split in the circuits if this Court disagrees with my argument. But Peebles does agree with my argument. The Fourth Circuit there, in looking at the North Carolina state sentencing regime, which is a mandatory regime like Minnesota's, said that, yes, we have to look past just that minimum requirement of what the statute says is the minimum and maximum. And we have to look at the sentencing guidelines in North Carolina to determine if those guidelines impact the minimum or maximum sentence a judge could sentence the individual to. And that's all we are asking the Court to do here, is to look at that fact here, that there is a maximum sentence that a State court judge could have sentenced Ms. Rosebeer to. There is also, as the Government has pointed out, this is an egregious case. Ms. Rosebeer is a horrible person. But the point is, just as in every case where the Government believes that about somebody they prosecute, there is a path for which they can increase the sentence. They can provide notice of an enhanced sentence. They can charge a mandatory minimum and prove that up, whether that's proved to a jury in a Unitarian verdict form or a bifurcation. And, Judge Erickson, in that plea setting that you suggested, every day in Federal court, defendants agree to the facts that trigger a mandatory minimum. And that's right. The same thing can happen. They plead to the facts. They plead to the facts. That's exactly right. And if somebody does a straight plea and disagrees, then we have a sentencing hearing. And yes, maybe in this case we might have to have a jury brought in for that. But that's what Apprendi requires. That's what the law requires. And it's, this is the law that's before the court. And I understand it creates a difference in sentencing in one district in our Eighth Circuit. But that's what the statute requires this court to do, is to look at the State's sentencing regime. That's what the plain language of the Major Crimes Act and the Assimilated Crimes Act tells us we must do. So, unfortunately, there are five States across the entire country where the government will have to, is on notice in the District of Minnesota, that if they bring this case, they have to comply with some notice requirements. And my time is up. Thank you. Thank you, counsel. The case was well briefed and the arguments were very helpful. As I recall, we moved this case to help us deal with a pretty hectic week in Minnesota. You're both local attorneys, so it didn't cost a lot of travel disruption, but it's still difficult for lawyers to have to do that and mess up your schedules otherwise, so we appreciate it. Does that complete the argument calendar? Yes, Your Honor. Very good. Then the court will be in recess until 9 o'clock. Let's see. Are we 8.30 or 9? Anyway, until tomorrow morning. I think it's 9 o'clock, but it might be 8.30. I think it is 9.